## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

<table>
<tr><td><strong>ERIN LINTZENICH,</strong></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><strong>Plaintiff,</strong></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td><strong>Case No. 1:21-cv-00036</strong></td></tr>
<tr><td><strong>v.</strong></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td><strong>JUDGE CAMPBELL</strong></td></tr>
<tr><td><strong>PFTN COLUMBIA, LLC d/b/a</strong></td><td>)</td><td><strong>MAGISTRATE JUDGE HOLMES</strong></td></tr>
<tr><td><strong>PLANET FITNESS,</strong></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><strong>Defendant.</strong></td><td>)</td><td></td></tr>
</table>

## MEMORANDUM

Pending before the Court is Defendant PFTN Columbia, LLC's ("PFTN") Motion for Summary Judgment. (Doc. Nos. 17, 18). Plaintiff Erin Lintzenich responded to the motion (Doc. Nos. 22, 23). In support of the motion, Defendant filed a Statement of Undisputed Material Facts (Doc. No. 19) to which Plaintiff filed a response (Doc. No. 24). Plaintiff also filed a Statement of Additional Material Facts (Doc. No. 25) to which Defendant responded (Doc. No. 29).[1]

## I.        BACKGROUND

Erin Lintzenich was employed by PFTN as a part-time front desk worker for approximately a year and a half from December 2018 until she was terminated on May 5, 2020. (Def. SOF ¶¶ 1, 3, 4). Because Plaintiff worked full-time as teacher, during the school year she primarily worked for PFTN on weekends, and sometimes picked up additional shifts during the week. (Lintzenich Dep. at 20-24).[2]

---

[1]        For ease of reference the Court cites Defendant's Statement of Facts together with Plaintiff's response (Doc. No. 24) as "Def. SOF ¶__," and Plaintiff's Statement of Additional Facts together with Defendant's response (Doc. No. 29) as "Pl. SOF ¶__."

[2]        The parties have separately filed portions of the transcripts from the depositions of three witnesses: Plaintiff Erin Lintzenich (Doc. Nos. 20-1 and 23-3), Brandon Skelton (Doc. Nos. 20-3 and 23-1), and Julia Mandella (Doc.

As a front desk employee, Plaintiff handled a variety of membership and custodial duties. (Def. SOF ¶ 2). Plaintiff states that beginning around October 2019, two male front desk employees, Josh Belcher and Cam Sheppard sent her a number of text and voice messages that were sexual in nature. (*Id*. ¶ 11; Lintzenich Dep. at 51; Lintzenich Decl., Doc. No. 27-1 (listing messages sent between September 26, 2019, and February 16, 2020)). On February 23, 2020, Plaintiff told PFTN General Manager Brandon Skelton that Belcher and Sheppard made sexual comments to her and that she was finding it "more and more uncomfortable to work with [Belcher and Sheppard] or be around them." (Def. SOF ¶ 7; Lintzenich Dep. at 44). Skelton responded that she would need to come in and make a statement. (Lintzenich Dep. at 45).

A few weeks passed before Plaintiff raised the issue again. (*Id*. at 41). When Plaintiff noticed she was scheduled to work with Belcher during an upcoming shift, she again told Skelton she was uncomfortable working with Belcher due to sexual comments he made towards her. (Skelton Dep. at 24; Lintzenich Dep. at 68). She added that she would resign if she had to work with him. (*Id*.). Ultimately, another employee covered the shift she was scheduled to work with Belcher and Plaintiff never worked with him or Sheppard again. (Def. SOF ¶ 12; Lintzenich Dep. at 67-68).

Skelton then arranged for Plaintiff to meet with the regional manager, Julia Mandella, on March 10, 2020, to discuss her sexual harassment allegations. (Skelton Dep. at 34, 37; Mandella Dep. at 12-13, 32-33, 69). During the meeting Plaintiff showed Mandella some of the messages and, pursuant to Mandella's request, provided copies of the messages a few days later. (Def. SOF

---

Nos. 20-2 and 23-2). For ease of reference all citations to deposition testimony are to "[Name] Dep. at [transcript page]."

¶ 10; Mandella Dep. at 33; Lintzenich Dep. at 50). The messages included the following from Belcher:

- "I want to lay with her sinfully… I'm sorry she's sexy and best part like u she don't realize it... Shauna is really sexy in gym clothes."

- "Would you eat sushi off Brandon [Skelton]? What about buffalo wings off his ass with celery in the crack?"

- "I told Joel I'd aggressively fuck his girlfriend if she ever gave me a sign I could."

- "He's waiting for his chance to mount [you]."

- "Him [Cam Sheppard] and you in a CAMwich? [emojis omitted]."

- "Do you show your goodies to a lot of dudes?"

- "I love her and want to mount."

- "If I wasn't 300 pounds would you let me bust that pussy open."

(Lintzenich Decl., Doc. No. 27-1, ¶¶ 7-16; Mandella Dep. at 40, 62-63, 71). The last message was sent to Plaintiff as a voice message from Belcher's Facebook account on February 16, 2020, the week before she reported Belcher and Sheppard's conduct to Skelton. (Lintzenich Decl., Doc. No. 27-1, ¶ 16; Lintzenich Dep. at 71). As part of the investigation into Plaintiff's sexual harassment allegations, Mandella obtained written statements from Sheppard and Belcher on March 10 and 13, 2020, and reviewed the messages. (Doc. No. 20-2 ¶ 8; Mandella Dep. at 81). She described the last voice message as "vulgar" and agreed that the messages were sexual in nature, but stated that she did not "see any sexual harassing conduct toward anyone in those messages" and thought only that Belcher "played a part in Cam's antics." (Mandella Dep. at 39).

One week after Plaintiff's meeting with Mandella, the club closed due to the COVID-19 pandemic, and PFTN furloughed its employees. (Def. SOF ¶ 5; Skelton Dep. at 80). Sheppard

resigned shortly thereafter. (Doc. No. 20-2 ¶ 8; Skelton Dep. at 41). Mandella acknowledged that the text and voice messages were "sexual in nature," and Skelton stated that he considered the text messages "sexual harassment." (Mandella Dep. at 74-75; Skelton Dep. at 58). Ultimately, however, PFTN concluded that Plaintiff was not subjected to sexually harassing conduct by Belcher and no action was taken regarding his employment. (Mandella Dep. at 74-75; Skelton Dep. at 41 ("there was nothing of a sexual nature that we felt like would be moving toward termination")).

The club reopened in mid-May 2020. On May 5, 2020, Plaintiff was informed that she was "separated, but rehirable" because they were not fully reopening the club due to the COVID-19 pandemic and "didn't have that many hours." (Def. SOF ¶ 15). Plaintiff responded that she would like to return to work if it became available. (Lintzenich Dep. at 65). When the club fully reopened in June 2020, Josh Belcher returned as an employee. (Pl. SOF ¶¶ 9-10). PFTN has not contacted Plaintiff about returning to work. (Lintzenich Decl., Doc. No. 27-1, ¶ 22).

Plaintiff contends PFTN did not respond appropriately to her allegations of sexual harassment and that she was terminated in retaliation for her complaint. She brings claims against PFTN under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 ("Title VII") for sexual harassment and retaliation.

## II.       STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The

4

moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III.    ANALYSIS

#### A.  Sexual Harassment / Hostile Work Environment

To prevail on a hostile work environment claim, Plaintiff must show: (1) she is a member of a protected class; (2) she experienced unwelcomed sexual harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *See Doe v. City of Detroit, Mich.*, 3 F.4th 294, 300 (6th Cir. 2021) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)). Defendant challenges Plaintiff's ability to establish the fourth and fifth elements – that the harassment created a hostile work environment and that the employer is liable for the harassment.

5

1. <u>Hostile Work Environment</u>

"Whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact.'" *Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 333 (6th Cir. 2008). To show a hostile work environment, Plaintiff must show, based on a totality of the circumstances, that the harassing conduct was sufficiently severe or pervasive to alter the conditions of her employment. *Id*. (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986)). "To be actionable, the harassment must consist of more than words that simply have sexual content or connotations." *Hawkins*, 517 F.3d at 333. Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (internal citations and quotations omitted).

Defendant contends Plaintiff cannot show the alleged harassing conduct was sufficiently severe or pervasive because she testified that despite the alleged sexual harassment, she was able to go to work and perform her job. (Doc. No. 18 at 9 (citing Lintzenich Dep. at 80 (affirming that she was "able to come to work and do what [she] needed to do"))). Defendant asserts Plaintiff has provided no evidence that the harassment had the effect of "unreasonably interfering with her work performance." (*Id*.).

The Court disagrees. Plaintiff was subjected to a litany of sexual text and voice messages over a period of several months. After months of enduring such conduct, she complained to management that she did not feel comfortable working with Belcher or Sheppard precisely because of their sexual comments to her and about her. The nature of the messages, which could be characterized as lewd, vulgar, and even portending sexual violence, and that the messages persisted for a number of months, is such that a reasonable jury could find the harassment severe and

6

pervasive enough that it altered the terms and conditions of her employment. *See Hawkins*, 517 F.3d at 334 ("sexual comments and harassing acts of a 'continual' nature are more likely to be deemed pervasive") (citing *Albeita v. Transam. Mailings, Inc*., 159 F.3d 246, 252 (6th Cir. 1998)).

2. <u>Employer Liability</u>

An employer's liability "flows from their own negligence in responding to complaints of harassment." *Garcia v. Beaumont Health Royal Oak Hosp*., 2022 WL 5434558, at * 3 (6th Cir. Oct. 7, 2022) (citing *Fleenor v. Hewitt Soap Co*., 81 F.3d 48, 50 (6th Cir. 1996)). An employer will be liable for a hostile work environment "if it knew or should have known of the charged sexual harassment and failed to implement a prompt and appropriate corrective action." *Doe v City of Detroit, Mich.*, 3 F.4th 294, 301 (6th Cir. 2021) (quoting *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). For the employer to be liable under these circumstances, its response must "manifest[] indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* (citation and brackets omitted). Therefore, the relevant inquiry is not whether Plaintiff was sexually harassed by her coworkers, but whether PFTN's conduct in response to her complaint was "objectively reasonable under the circumstances." *See Garcia*, 2022 WL 5434558, at * 3 (citing *Fleenor*). Generally, an employer's response is adequate if it is "reasonably calculated to end the harassment." *Id*. (citing *Hawkins*, 517 F.3d at 338).

Defendant contends Plaintiff does not have evidence that PFTN responded inappropriately to the charges of harassment because PFTN investigated her allegations and she was not required to work with Belcher or Sheppard again. (Doc. No. 18 at 10-11). Defendant is correct that reassigning work schedules to keep the complaining party apart from her alleged harasser can be part of an appropriate response to complaints of harassment. *See Collette v. Stein-Mart, Inc*., Fed. App'x 678, 686 (6th Cir. 2005). However, Plaintiff argues that the fact that she did not work with

7

Belcher of Sheppard was due to her own action, the COVID-19 closure, Sheppard's resignation, and her subsequent termination, not any affirmative steps taken by PFTN. Indeed, there were only a few weeks after Plaintiff reported the harassment, and only one week after the investigation began, for PFTN to implement remedial measures. During that short time, after she notified Skelton about the sexual messages from Belcher and Sheppard, she was scheduled to work with Belcher, potentially subjecting her to more harassment. Plaintiff complained about the scheduling issue and ultimately found another employee to take her shift, which she claims was arranged without any assistance from Skelton or Mandella. (Lintzenich Dep. at 68).

In any event the single scheduling decision is but one piece of Defendant's response. "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Doe*, 3 F.4th at 301 (citing *Collette*, Fed. App'x at 686). PFTN argues that it satisfied this obligation by promptly investigating Plaintiff's complaint. (Doc. No. 18 at 11-12). Plaintiff contends the investigation was inadequate because, ultimately, no action was taken against either Sheppard or Belcher.

The Court agrees that there are questions of fact regarding whether PFTN implemented a "prompt and appropriate corrective action" when it appears Plaintiff was scheduled to work with her alleged harasser after notifying management of the harassment, and, at the conclusion of the investigation, no action was taken against the employees who sent the sexual messages to Plaintiff. The failure to take corrective action could indicate that PFTN "tolerated or condoned the situation" or "manifest[ed] indifference of unreasonableness in light of the facts," and was not reasonably calculated to end the harassment. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999);

*Hawkins,* 517 F.3d at 338; *Garcia*, 2022 WL 5434558, at * 3. Accordingly, the Court finds Defendant is not entitled to summary judgment on this claim.

## B. Retaliation

Title VII prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Because Plaintiff offers no direct evidence of retaliation, the Court considers her claim under the *McDonnell Douglas* burden shifting framework. *Kenney v. Aspen Tech., Inc*., 965 F.3d 443, 448 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in activity protected by Title VII; (2) the exercise of her protected rights was known to Defendant; (3) Defendant thereafter took an action that was materially adverse to the plaintiff; and (4) Plaintiff's protected activity was the but-for cause of the adverse employment action. *Id.* If Plaintiff establishes a *prima facie* case, the burden shifts to the Defendant to provide a legitimate, nondiscriminatory reason for its actions. *Id.* If Defendant satisfies this burden, the burden shifts back to Plaintiff to demonstrate that the proffered reason was a mere pretext for retaliation. *Id*.

Defendant contests Plaintiff's ability to establish the last element of the *prima facie* case – that retaliation was the but-for cause of her termination. Defendant argues Plaintiff does not have evidence that her report of sexual harassment caused her termination because the temporal proximity between her report of harassment and her termination is not sufficiently close to establish causation. The Court disagrees. First, Defendant ignores that PFTN was closed from March 17, 2020, until May 15, 2020, due to COVID-19. Accordingly, May 2020, when PFTN was planning its reopening, was the first opportunity it had to retaliate against her. *Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Sch*., 974 F.3d 652, 664 (6th Cir. 2020) (finding a genuine dispute of

fact where there was an eleven-month gap between the plaintiff's protected conduct and the alleged retaliation when the alleged retaliation occurred within months of the first "meaningful opportunity" the employer had to retaliate) (collecting cases). Moreover, the Sixth Circuit has denied summary judgment where an employer took adverse action against a plaintiff within a few months of learning of their protected activity. *Id*. at 664-65 (6th Cir. 2020) (collecting cases). The Court finds the temporal proximity between Plaintiff's complaints about sexual harassment and her termination sufficiently establishes the causation element of a *prima facie* claim for retaliation.

Defendant argues that even if Plaintiff can establish a *prima facie* case, it has offered a legitimate non-retaliatory reason for her termination – the temporary closure and then partial reopening during the COVID-19 pandemic. Defendant adds that, although she was advised that she was "rehirable," Plaintiff did not express and interest in coming back to work. (Doc. No. 18 at 14 (citing Skelton Dep. at 15-16)). Plaintiff disputes this assertion, claiming that she told Skelton on May 5, 2020, the day she was terminated, that she wanted to return to work when hours became available. (Lintzenich Decl., Doc. No. 27-1, ¶ 21). She adds that, not only did they not rehire her when the club reopened in June, it rehired her alleged harasser Josh Belcher, who was also part-time and also worked primarily on weekends. Moreover, Plaintiff contends she was more qualified for the position than Belcher because she was the more senior employee and was qualified to train employees. (Doc. No. 23 at 19 (citing Lintzenich Dep. at 19; Skelton Dep. at 14, 16, 18)). Plaintiff contends that "rather than trying to eliminate the harassment, Defendant chose instead to eliminate the complaining party." (Doc. No. 23 at 20).

At this stage, to survive summary judgment, Plaintiff does not need to prove pretext, she only needs to show that the question of pretext is a genuine factual dispute – that a reasonable juror could find that the defendant's reasons were pretextual. *Kirilenko-Ison*, 974 F.3d at 667. The Court

in mindful that an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 564 (6th Cir. 2004). Here, Plaintiff has raised a genuine question of fact regarding whether PFTN proffered non-retaliatory reason for terminating her was pretextual given that PFTN either did not terminate or opted to rehire Belcher.

## IV.  CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (Doc. No. 17) is **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

11